**FABRICA INCORPORATED, a corporation, Plaintiff-Appellant,**

v.

**EL DORADO CORPORATION, a corporation, Defendant-Appellee.**

Nos. 81–5406, 80–6085.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 3, 1982.

Decided Jan. 28, 1983.

---

David S. Romney, Romney, Golant, Disner & Ashen, Beverly Hills, Cal., for plaintiff-appellant.

Ronald W. Reagin, Reagin & King, Los Angeles, Cal., for defendant-appellee.

Before Judges HUG, TANG, and PREGERSON, Circuit Judges.

PREGERSON, Circuit Judge:

Appellant Fabrica sued appellee El Dorado for copyright infringement and unfair competition. The district court granted El Dorado's motion for a directed verdict on the copyright claim. The jury then returned a general verdict in favor of Fabrica on the unfair competition issue. The court, however, entered judgment n.o.v. for El Dorado. Fabrica appeals both the directed verdict and the judgment n.o.v.

We believe that the court correctly directed a verdict in favor of El Dorado on the copyright claim. We conclude, however, that a reasonable jury could have returned a verdict for Fabrica on the unfair competition claim. We therefore affirm in part, reverse in part, and remand for further proceedings.

*Background*

Fabrica and El Dorado are commercial carpet manufacturers and wholesalers.

Commercial carpeting is customarily marketed by way of "display folders"—books containing carpet samples accompanied by a description of the carpet's technical specifications. Most mills develop a distinctive layout and design for their folders to create a recognizable company style.

Both Fabrica and El Dorado were originally in the residential carpet business. When Fabrica decided to market commercial carpeting, it commissioned the design of a distinctive, high-quality display folder. The folder was covered with simulated white suede, with saddle stitching along the borders and brass tips at the corners. It had a unique fold-out book format featuring a full-page carpet sample on the inside left panel and small carpet samples on the inside right panel. According to both Fabrica and El Dorado, the folder was superior, both in structure and appearance, to any carpet sample folder previously used by a commercial carpet mill.

El Dorado entered the commercial carpet market at about the same time as Fabrica. The evidence showed that El Dorado's vice-president took a Fabrica display folder to a folder manufacturer and instructed him to copy it. Virtually every feature of the Fabrica folder was incorporated into the design of the El Dorado folder; the only difference was in the color of the simulated suede and stitching. El Dorado even copied the placement on the folders of the brand name, company name and address, and showroom locations. Appendix A to this opinion consists of six photographs, each of which compares features of the Fabrica and El Dorado folders.

El Dorado admits the copying but argues that (1) the folders are not entitled to copyright protection as graphic works because they are "useful articles" under the Copyright Act, 17 U.S.C. § 101, and (2) the folders are "functional" and therefore not protected under the principles of unfair competition.

*The Copyright Issue*

At the close of testimony, the district court granted El Dorado's motion for a directed verdict on the copyright claim. The court ruled as a matter of law that Fabrica's carpet display folders were "useful articles" under the copyright laws, 17 U.S.C. § 101, and therefore not entitled to protection as a "pictorial, graphic and sculptural work" under 17 U.S.C. § 102(a)(5).

■ A directed verdict is proper if, examining the evidence in the light most favorable to the non-moving party, there is no substantial evidence to support a verdict for that party. *Davison v. Pacific Inland Navigation Co.*, 569 F.2d 507, 509 (9th Cir.1978). The court must draw all reasonable inferences in favor of the non-moving party. *Flores v. Pierce*, 617 F.2d 1386, 1389 (9th Cir.1980). The court may not direct a verdict simply because it feels that a contrary conclusion would have been more reasonable. *Tennant v. Peoria & Pekin Union Railway*, 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944). The same standard is applied when the Court of Appeals reviews the granting of a directed verdict. *Marquis v. Chrysler Corp.*, 577 F.2d 624, 631 (9th Cir.1978).

Fabrica argues that its display folder is a "pictorial, graphic and sculptural work" and therefore qualifies for copyright protection under 17 U.S.C. § 102(a)(5). The types of "pictorial, graphic and sculptural works" that will be accorded copyright protection are described in 17 U.S.C. § 101 as

> two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, technical drawings, diagrams and models . . . .

Such works were not copyrightable at all for a long period of time, but were protected, if at all, by patent. In *Mazer v. Stein,* 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954), however, the Supreme Court ratified a copyright regulation providing for protection of "works of artistic craftsmanship, insofar as their form but not their mechanical or utilitarian aspects are concerned: . . ." 37 C.F.R. § 202.10(a) (1959).

After *Mazer,* in order to prevent the extension of copyright protection to all manner of "useful" industrial products, the Register of Copyrights promulgated the following regulation, which governed until the 1976 Copyright Act went into effect:

If the *sole* intrinsic function of an article is its utility, the fact that it is unique and attractively shaped will not qualify it as a work of art. However, if the shape of a utilitarian article incorporates features, such as artistic sculpture, carving, or pictorial representation, which can be identified separately and are capable of existence independently as a work of art, such features will be eligible for registration.

37 C.F.R. 202.10(c) (1959) (emphasis added).

As the district court in the instant case noted, this test was very difficult to apply. Courts struggled to decide whether an article's function was *solely* utilitarian. If so, copyright protection was denied unless the object's artistic features could be identified separately and exist independently as a work of art. If, however, an object was only *partly* utilitarian, its artistic features could be copyrighted even if its artistic features could not be identified separately and exist independently. *See* M. Nimmer, *Nimmer on Copyright,* § 2.08[B] (1981 ed.).

The 1976 Act changed that approach. The "useful article" limitation to copyright protection afforded graphic works is now contained in 17 U.S.C. § 101:

Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.

Useful articles are defined as

articles having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information. An article that is normally a part of a useful article is considered a "useful article."

█ The significant change from the prior law is that the courts need no longer determine whether an article's function is *solely* utilitarian. Now, if an article has *any* intrinsic utilitarian function, it can be denied copyright protection except to the extent that its artistic features can be identified separately and are capable of existing independently as a work of art.

The legislative history of the new Copyright Act makes it clear that Congress intended such a result:

[A]lthough the shape of an industrial product may be aesthetically satisfying and valuable, the Committee's intention is not to offer it copyright protection under the bill. Unless the shape of an automobile, airplane, ladies' dress, food processor, television set, or any other industrial product contains some element that, physically or conceptually, can be identified as separable from the utilitarian aspects of that article, the design would not be copyrighted under the bill. The test of separability and independence from "the utilitarian aspects of the article" does not depend upon the nature of the design—that is, even if the appearance of an article is determined by aesthetic (as opposed to functional) considerations, only elements, if any, which can be identified separately from the useful article as such are copyrightable.

*House Report,* 1976 *U.S.Code Cong. & Ad. News* 5668.

█ In the instant case, the district court concluded that Fabrica's folders, while "graphic works" under Section 101, are useful articles lacking any artistic feature identifiable separately from the utilitarian aspects of the article. On that basis, it directed a verdict in favor of El Dorado. This was a correct result. The folders' usefulness in marketing is their only reason for existence. There is no element of the folders that can be separated out and exist independently of their utilitarian aspects. Even if we were to apply the older more lenient test, the folders must be viewed as "solely" utilitarian. Under the stricter test of the new Act, weighing the evidence in the light most favorable to Fabrica, it is clear as a matter of law that the folders cannot be accorded copyright protection.

█ We reject Fabrica's assertion that its folders should be protected because they are advertising and promotional materials.

It is true that "a pictorial work is no less a subject of copyright protection because it is used to sell goods." *Bleistein v. Donaldson Lithographing Co.,* 188 U.S. 239, 23 S.Ct. 298, 47 L.Ed. 460 (1903). Fabrica attempts to make it appear, however, that advertising materials constitute some separate and distinct subject matter of copyright. That is not and has never been the law. Items otherwise copyrightable will not be denied copyright simply because of their advertising purpose, but they do not gain any greater protection than non-advertising materials. They must still fall within one of the seven areas of copyrightable subject matter set forth in 17 U.S.C. § 102. The folders therefore must still qualify as "pictorial, graphic, [or] sculptural works" under 17 U.S.C. § 102(a)(5).

Fabrica argues that under the trial court's reasoning, advertising will never qualify for copyright because it is always "designed and used solely as a sales tool" (the trial court's language with respect to Fabrica's folders)—and thus will always be a "useful article." That argument ignores the fact that useful articles *are* copyrightable if they can stand alone as works of art. Fabrica's folders do not have artistic features that can be separated from their utilitarian function. There was no substantial evidence that the folders existed for any reason independent of their utilitarian function as advertising and marketing tools. The district court properly granted a directed verdict.

*The Unfair Competition Issue*

Fabrica asserts that its display folders constitute "trade dress" for its carpeting and are thus protectible packaging and display for the product. The test of unfair competition in the case of a similar use of dress and packaging is whether there is a likelihood of confusion resulting from the total effect of the defendant's package on the eye and mind of an ordinary purchaser. *Jean Patou, Inc. v. Jacqueline Cochran, Inc.,* 201 F.Supp. 861, 866 (S.D.N.Y.1962), *aff'd,* 312 F.2d 125 (2d Cir.1963). *See also* J.T. McCarthy, *Trademarks and Unfair Competition* § 8:3 (1973).

El Dorado argues that its admitted copying is not actionable because the display folders are "functional" and are therefore not protected by the laws of unfair competition. The law denies protection to functional features to prevent the monopolization of useful technical advances that do not qualify for patents. *Intricate Metal Products, Inc. v. Schneider,* 324 F.2d 555, 562 (9th Cir.1963). *See also* J.T. McCarthy, *Trademarks and Unfair Competition* § 7:26 (1973). A broad range of products and product features has been found to be functional and denied protection. Trade dress itself may be functional and therefore open to copying. For example, ordinary packaging such as cellophane wrapping has been held functional and free for all to use. *See, e.g., Price Food Co. v. Good Foods, Inc.,* 400 F.2d 662 (6th Cir.1968).

The trial court in the instant case instructed the jury that it could not rule in favor of Fabrica if it found the folders to be functional. Nonetheless, when the jury returned a general verdict in favor of Fabrica, the court vacated that judgment and entered judgment n.o.v. in favor of El Dorado. We can uphold the district court's award of judgment n.o.v. only if, examining the evidence in the light most favorable to Fabrica, there was no substantial evidence below to support the jury's verdict. *Flores v. Pierce,* 617 F.2d 1386, 1389 (9th Cir.1980); *Davison v. Pacific Island Navigation Co.,* 569 F.2d 507, 509 (9th Cir.1973).

In *Pagliero v. Wallace China Co.,* 198 F.2d 339 (9th Cir.1952), this court discussed at length the concept of "functionality." The case arose after Pagliero manufactured dishes copying a floral pattern that Wallace China had designed for use on its own dishes. The court ruled that the design was functional and therefore open to copying. It defined functionality as follows:

"Functional" ... might be said to connote other than a trade-mark purpose. If the particular feature is an important ingredient in the commercial success of the product, the interest in free competition permits its imitation in the absence of a patent or copyright. On the other

hand, where the feature or, more aptly, design, is a mere arbitrary embellishment, a form of dress for the goods primarily adopted for purposes of identification and individuality and, hence, unrelated to basic consumer demands in connection with the product, imitation may be forbidden where the requisite showing of secondary meaning is made.

*Id.* at 343.

Both parties in the instant case focus on this definition to support their arguments. El Dorado points to the first part of the test. It argues that an attractive display folder is "an important ingredient in the commercial success of the product" and that Fabrica's folder is therefore open to copying. Fabrica, on the other hand, points to the second part of the test and argues that its folders are "a mere arbitrary embellishment, a form of dress for the goods [the carpeting] primarily adopted for purposes of identification and individuality." Thus, it argues, the folders should be protected.

The district court followed El Dorado's reasoning. It noted that the facts were undisputed that Fabrica wanted to protect its carpet sample folder because it is a "better sales tool" and contributes to the commercial success of the product. Based on that uncontroverted evidence, it vacated the jury verdict in favor of Fabrica and entered judgment n.o.v. for El Dorado.

The district court erred in setting aside the jury verdict. Product packaging and trade dress may, it is true, be functional. *See Price Food Co. v. Good Foods, Inc.,* 400 F.2d 662 (6th Cir.1968). However, this court has specifically limited application of the *Pagliero* functionality test to product features and has refused to apply the test to cases involving trade dress and packaging. In *Audio Fidelity, Inc. v. High Fidelity Recordings, Inc.,* 283 F.2d 551 (1960), for example, we considered an unfair competition challenge to a record jacket for a recording of railroad sounds. We distinguished *Pagliero* in ruling that the copied design of the record jacket constituted unfair competition, noting that *Pagliero* had dealt with the copying of a *product,* whereas the record jacket in issue was the pack-

age for the product. We quoted with approval an opinion Justice Stewart authored while sitting on the Sixth Circuit:

The difference in the protection against imitation which will be accorded to an article of commerce on the one hand, and to a package in which the article is marketed on the other, was long ago noted .... [T]he law which permits one to market an identical copy of his competitor's product does not give him freedom to imitate the appearance of the package in which the article is sold .... [T]he public policy which permits the imitation of an article of commerce is without relevance to the dress in which the article is marketed.

283 F.2d at 557 (quoting *Tas-T-Nut Co. v. Variety Nut & Date Co.,* 245 F.2d 3, 6–7 (6th Cir.1957)).

■ In the instant case, El Dorado argues that the carpet sample folders are not really trade dress, but constitute products in and of themselves. We disagree. The display folders are simply advertising and display materials. Consumers have no interest in the folders themselves; they merely aid consumers in selecting the actual product—the carpeting. The *Audio Fidelity* limitation on the *Pagliero* functionality test is applicable.

Another decision of this court recently clarified *Pagliero* and further demonstrates the district court's error in granting judgment n.o.v. *Vuitton et Fils S.A. v. J. Young Enterprises, Inc.,* 644 F.2d 769 (9th Cir. 1981), involved a trademark and unfair competition claim pertaining to a distinctive design of intertwined "LV" initials that decorates Louis Vuitton luggage and handbags. The district court granted summary judgment in favor of the defendants after finding that the design sought to be protected "constitutes the primary decoration of those goods and is a factor in their consumer appeal and saleability and as such is a functional element of the goods." *Id.* at 773. We reversed, stating:

We disagree with the district court insofar as it found that any feature of a product which contributes to the consumer appeal and saleability of the product is,

as a matter of law, a functional element of that product. Neither *Pagliero* nor the cases since decided in accordance with it impel such a conclusion.

*Id.* This court thus has specifically rejected the notion that a design feature is functional by definition if it increases appeal and sales of the product. Yet the consumer appeal of the folders and their impact on the saleability of the carpeting are the precise reasons why the district court granted judgment n.o.v. in the instant case. Although *Vuitton* involved the design features of a product and the instant case involves trade dress for a product, we believe that the analysis of *Vuitton* is equally applicable here. The district court therefore erred in vacating the jury's verdict.

## CONCLUSION

The district court is affirmed insofar as it directed a verdict on the copyright claim. It is reversed with respect to its grant of judgment n.o.v. on the unfair competition claim. The case is remanded for trial on the issue of damages.