**ABC, INC., Plaintiff,**

v.

**PRIMETIME 24, JOINT VENTURE, Defendant.**

**No. CIV.A. 1:97CV00090.**

United States District Court, M.D. North Carolina.

Sept. 3, 1999.

**560**

Reid L. Phillips, Brooks, Pierce, McLendon, Humphrey & Leonard, Greensboro, NC, Wade Hampton Hargrove, Brooks Pierce McLendon Humphrey & Leonard, L.L.P., Raleigh, NC, for ABC, Inc., plaintiffs.

W. Andrew Copenhaver, Womble Carlyle Sandridge & Rice, Winston–Salem, NC, Pressly McAuley Millen, Womble Carlyle Sandridge & Rice, Raleigh, Andrew Z. Schwartz, Stephen B. Deutsch, Richard M. Brunell, Daniel H. Haines, Foley Hoag & Eliot, LLP, Boston, MA, for Primetime 24, Joint Venture, defendants.

James Henry Jeffries, IV, Amos & Jeffries, L.L.P., Greensboro, NC, for Andrew S. Fisher, deponent.

## MEMORANDUM OPINION

BULLOCK, Chief Judge.

This copyright action is before the court on Plaintiff ABC, Inc.'s motion and supplemental motion to award statutory attorney's fees pursuant to 17 U.S.C. § 505. For the following reasons, the court will grant Plaintiff's motions.

## BACKGROUND

ABC filed this copyright infringement action on January 28, 1997, alleging violation of the Satellite Home Viewer Act ("SHVA"), 17 U.S.C. § 119, and seeking declaratory and injunctive relief as well as attorney's fees and costs. On July 16, 1998, this court issued a memorandum opinion which held that Defendant PrimeTime 24, Joint Venture ("PrimeTime 24") had "engaged in a willful or repeated pattern or practice of transmitting ABC programming to households ineligible for such service" under the SHVA and that ABC was therefore "entitled to judgment as a matter of law on its claim of copyright infringement." *ABC, Inc. v. PrimeTime 24, Joint Venture,* 17 F.Supp.2d 467, 478 (M.D.N.C.1998). The court further held that PrimeTime 24 had failed to comply with the SHVA's subscriber reporting requirements.

Thereafter, on August 19, 1998, this court held that PrimeTime 24 had failed as a matter of law to establish any of its affirmative defenses. The court then granted summary judgment in favor of ABC as to all of its claims. *See ABC, Inc. v. PrimeTime 24, Joint Venture,* 17 F.Supp.2d 478 (M.D.N.C.1998). Subsequently, on July 6, 1999, the United States Court of Appeals for the Fourth Circuit affirmed this court's holding that PrimeTime 24 had engaged in a repeated pattern or practice of violations of the SHVA and this court's injunction enjoining PrimeTime 24 from transmitting ABC programming to any household within WTVD's predicted Grade B contour. *See ABC, Inc. v. PrimeTime 24, Joint Venture,* 184 F.3d

348, 353–55 (4th Cir.1999). The Fourth Circuit also vacated as moot this court's judgment with respect to PrimeTime 24's subscriber reporting violations. *Id.* at 355.

## DISCUSSION

The SHVA incorporates the remedies provided in Chapter 5 of the Copyright Act, including the recovery of attorney's fees and costs. *See* 17 U.S.C. § 119(a). The Copyright Act provides in relevant part:

> In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

17 U.S.C. § 505.

■ The court will first address Prime-Time 24's argument that Section 412 of the Copyright Act, 17 U.S.C. § 412, precludes an award of attorney's fees in this case. Section 412 provides in relevant part that:

> no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for—(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

17 U.S.C. § 412. In other words, statutory damages and attorney's fees are available as to unpublished works only if registration preceded infringement, and as to published works only if registration either preceded infringement or if registration occurred within three months after first publication. *See* 1 Melville B. Nimmer and David Nimmer, *Nimmer on Copyright* § 4.01[A] at 4–5 (1998). In its opening memorandum, ABC cited certifi-cates of registration for a number of ABC programs which generally list a date of publication and indicate the program was registered within three months of that publication date. Pursuant to 17 U.S.C. § 410(c), the certificates "constitute *prima facie* evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c).

In response, PrimeTime 24 notes that the publication date listed on the certificates corresponds to the original broadcast date for those programs and speculates that ABC is relying on the initial broadcast of the program as the act of publication. PrimeTime 24 then asserts that, as a matter of law, the broadcast of a television program is a performance which does not constitute publication.

■ In copyright law, the concept of publication has a specialized meaning that is much different from the lay definition of the term. Under the Copyright Act, "publication" is defined as:

> the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offering to distribute copies or phonorecords to a group of persons for further distribution, public performance, or public display constitutes publication. A public performance or display of a work does not itself constitute a publication.

17 U.S.C. § 101. It is well settled that "broadcasting *per se* is merely a performance and hence not an act of publication." *Nimmer on Copyright* § 4.11[B] at 4–57 (1998). Thus, if ABC was relying on the act of broadcasting to establish publication, the court would agree with PrimeTime 24's argument. However, in its reply ABC has clarified that it is not asserting that the broadcast of its programs constitutes publication. Instead, as the second declaration of Kenneth Shepps establishes, ABC offers, on the date of broadcast, to distribute copies of its programs to entities in Canada and other countries for purposes of further

distribution or public performance. Just as it is clear that mere broadcast does not constitute publication, it is also clear that "the distribution of copies of a motion picture to television stations for broadcast purposes constitutes an act of publication." *Nimmer on Copyright* § 4.11[B] at 4–57.

PrimeTime 24 presents no evidence to respond to ABC's showing that it offers to distribute copies of its programs to entities in Canada and other countries for purposes of further distribution or public performance. Instead, it argues that ABC has not established that "copies" it offers meets the definition of the term "copies" under the Copyright Act. PrimeTime 24 also argues that, based on the doctrine of territoriality, the act of publication must occur within the United States. As to the first argument, the second Shepps declaration, when combined with the presumption afforded to the registration certificates under the Act, establishes that ABC does in fact offer copies as that term is defined under the Act. If PrimeTime 24 has evidence that ABC does not in fact offer to distribute copies, it should have come forward with evidence of this fact as opposed to speculating that Shepps' second declaration may not mean what it says.

As to the second argument, it is clear that the significance of publication, including its relevance in connection with the recovery of statutory damages and attorney's fees, "attaches ... regardless of where in the world it took place." *Nimmer on Copyright* § 4.01[C][1] at 4–7. The territoriality doctrine that PrimeTime 24 refers to is that United States' copyright laws have no application to extraterritorial infringement, an issue wholly unrelated to that of publication. *See generally Nimmer on Copyright* § 4.01[C][1]. Accordingly, the court concludes that ABC has satisfied the Section 412 prerequisites to an award for statutory attorney's fees.

■ PrimeTime 24 next argues that ABC is not entitled to an award of statutory attorney's fees because all or most of those fees have been paid by a third party, the National Association of Broadcasters ("NAB"), of which ABC is a member. PrimeTime 24 cites no case law in support of this argument. In other contexts, courts have consistently held that the fact that a third party has paid some or all of the prevailing party's legal fees does not bar a recovery of statutory attorney's fees. *See Pickering v. Holman*, 459 F.2d 403, 407–08 (9th Cir.1972) (holding in a patent case that, although a third party had paid the prevailing party's legal fees and expenses, the prevailing party was nevertheless entitled to recover those fees and expenses from the losing party); *American Council of the Blind of Colorado, Inc. v. Romer*, 962 F.2d 1501, 1503–04 (10th Cir. 1992) (finding full payment of attorney's fees by nonparty to be irrelevant to an award of attorney's fees to a prevailing party under Section 1988), *vacated on unrelated grounds*, 506 U.S. 1075, 113 S.Ct. 1038, 122 L.Ed.2d 348 (1993). The court concludes that, while the fact that ABC's legal fees and expenses have been paid by the NAB may be a factor which the court considers in deciding whether to exercise its discretion in awarding fees, that fact does not bar ABC from recovering such fees.

■ Having concluded that ABC has satisfied Section 412 prerequisites to an award of attorney's fees under Section 505 and that the fact that the NAB has paid all or most of ABC's fees does not bar ABC from seeking such fees, the court now turns to the issue of whether an award of attorney's fees is warranted under the circumstances of this case. An award of attorney's fees is not to be made as a matter of course, but is instead a matter of the court's discretion. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 114 S.Ct. 1023, 127 L.Ed.2d 455 (1994). The Fourth Circuit has identified the following factors which a court is to consider in deciding whether to award attorney's fees:

(1) the motivation of the parties; (2) the objective reasonableness of the legal and

factual positions advanced; (3) the need in particular circumstances to advance considerations of compensation and deterrence; and (4) any other relevant factor presented.

*Superior Form Builders, Inc. v. Dan Chase Taxidermy Supply Co., Inc.*, 74 F.3d 488, 498 (4th Cir.) (citing *Rosciszewski v. Arete Assocs., Inc.*, 1 F.3d 225, 234 (4th Cir.1993), *cert. denied*, 519 U.S. 809, 117 S.Ct. 53, 136 L.Ed.2d 16 (1996).

■ As to the motivation of the parties, the Fourth Circuit has instructed that while a finding of willful infringement or bad faith on the part of an opposing party is not necessarily dispositive, it is a factor which the court may properly consider. *See Rosciszewski*, 1 F.3d at 234. In the court's opinion, the motivation of the parties in this case is the most significant factor relating to the decision of whether to award attorney's fees. In particular, ABC instituted this action in good faith and for the purpose of protecting the copyrights it had acquired for its television programs. PrimeTime 24, in contrast, engaged in a repeated practice of infringement which, in the court's opinion, did not indicate that it was acting in good faith. As the court previously noted, a "mountain of evidence" belied PrimeTime 24's protestations of good faith. In particular the court stated:

> Although PrimeTime knew of the governing legal standard, it nevertheless chose to adopt one it found more convenient. PrimeTime was broadcasting network programing to thousands of subscribers who received a signal of Grade B intensity as defined by Congress. PrimeTime has simply ignored the Grade B test even though it tried and failed to persuade Congress to adopt a test of eligibility based upon subscriber declarations about over-the-air reception. 'A good faith belief as to what the law should be or what you want the law to be is not enough.' [*Columbia Pictures Indus., Inc. v. Liberty Cable, Inc.*, 919 F.Supp. 685, 690 (S.D.N.Y.1996).] The court therefore finds that there is no material dispute that PrimeTime's transmissions to ineligible households were grossly negligent and 'repeated.'

*ABC*, 17 F.Supp.2d at 476. The Fourth Circuit agreed, noting that PrimeTime 24 knew that the SHVA was governed by an objective standard, but nevertheless recruited subscribers solely on the basis of their subjective representations of picture quality. *ABC*, 184 F.3d at 353–54. The court therefore concludes that the motivation-of-parties factor weighs heavily in favor of awarding attorney's fees.

The second factor focuses on the objective reasonableness of the legal and factual positions advanced in the litigation. In evaluating this factor the court should consider, for example, "whether the positions advanced by the parties were frivolous, on the one hand, or well-grounded in law and fact, on the other." *Rosciszewski*, 1 F.3d at 234. Ordinarily an award of attorney's fees is not appropriate in copyright cases involving novel, complex, or unsettled issues of law and fact. *See, e.g., Bourne Co. v. Walt Disney Co.*, 1994 WL 263482 at *2 (S.D.N.Y.1994). Nevertheless, an award of attorney's fees is appropriate where the record demonstrates that the non-prevailing party failed to maintain its legal position in good faith. *See Superior Form Builders*, 74 F.3d at 498 (upholding award of attorney's fees in case involving novel and complex legal questions where record demonstrated that the defendant failed to pursue legal issues in good faith). As the court previously noted, PrimeTime 24 repeatedly advanced legal arguments which were squarely at odds with the language and legislative history of the SHVA. Accordingly, even though the legal issues in this case may have been novel or complex, PrimeTime 24's conduct exhibited a calculated decision to ignore the requirements of the SHVA and pursue a legal standard that it found more convenient.

The third factor relates to the need under the circumstances to advance consider-

ations of compensation and deterrence. In considering this factor, the court may find relevant the ability of the non-prevailing party to fund an award. *Rosciszewski*, 1 F.3d at 234. The court finds that this factor also supports an award of fees. In particular, the deterrence consideration is particularly strong given PrimeTime 24's repeated infringement under circumstances indicating a willful disregard for the requirements of the SHVA. Moreover, there is no evidence that PrimeTime 24 cannot afford to fund an award of attorney's fees.

Finally, although the court may consider any other relevant factor, the court does not find any factor present which would alter its conclusion that an award of attorney's fees is appropriate in this case. Accordingly, the court will grant ABC's motion for attorney's fees.

■ Having concluded that an award of attorney's fees is warranted in this case, the court must now determine the reasonableness of the requested fee.[1] In so doing, the court applies the traditional lodestar method. Under that method, the lodestar figure is determined by multiplying the reasonable number of hours expended by a reasonable rate. In deciding what constitutes a reasonable number of hours and a reasonable rate, the court is guided by the following factors: (1) the time and labor required; (2) the novelty and difficulty of the issue; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of litigation; (7) the time limitations imposed

by the client or the circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the attorney and client; and (12) attorney's fee awards in similar cases. *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.1974); *see Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir.) (adopting *Johnson* factors), *cert. denied*, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978); *Diamond Star Bldg. Corp. v. Freed*, 30 F.3d 503, 507 n. 2 (4th Cir.1994) (copyright case directing application of *Johnson* factors). The court must make specific findings on each of the *Johnson* factors. *See Rosciszewski*, 1 F.3d at 234 n. 8.

The Fourth Circuit has directed that the determination of prevailing market rates in the relevant community is

fact-intensive and best guided by what attorneys earn from paying clients for similar services in similar circumstances. While evidence of fees paid to attorneys of comparable skill in similar circumstances is relevant, so too is the rate actually charged by the petitioning attorneys when it is shown that they have collected those rates in the past from the client.

The relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits. In circumstances where it is reasonable to retain attorneys from other communities, how-

---

1. In its motions, ABC also requests recovery of litigation expenses and costs totaling $209,-632.05. Of this amount, $144,351.62 represents fees and expenses charged by outside professionals. While litigation expenses are generally recoverable as part of a recovery of attorney's fees, *see, e.g., Herold v. Hajoca Corp.*, 864 F.2d 317, 323 (4th Cir.1988), *cert. denied*, 490 U.S. 1107, 109 S.Ct. 3159, 104 L.Ed.2d 1022 (1989), the Fourth Circuit has held that the fees and expenses of outside,

non-legal experts are traditionally not regarded as attorney's fees. *See Wheeler v. Durham City Bd. of Educ.*, 585 F.2d 618, 624 (4th cir.1978). The court will therefore not allow any of those expenses. Because this holding obviates PrimeTime 24's objections to certain of ABC's expenses, the court will not discuss those objections. Having presented unrefuted evidence that the remaining expenses were reasonable, the court will allow ABC to recover $65,280.43 in legal expenses.

ever, the rate in those communities may also be considered.

Thus, a fully compensatory fee will include compensation for all hours reasonably expended at market rates in the relevant community and market rates may be proved by their rate which clients normally and willingly pay the petitioning attorneys.

*Rum Creek Coal Sales, Inc. v. Caperton,* 31 F.3d 169, 175 (4th Cir.1994) (citations omitted).

In support of its motion, ABC has provided declarations from David Dreifus, Roger Goodspeed, Wade H. Hargrove, Wernerk Hartenberger, Thomas P. Olsen, Reid L. Phillips, John L. Sarratt, and Curt A. Wimmer. These affidavits contain evidence relating to each of the twelve factors the court is to consider in determining the lodestar figure. PrimeTime 24 has not responded with any evidence that the amounts paid to counsel for ABC were unreasonable or that the work expended was unnecessary, with one exception which the court will discuss later. Therefore, for the purposes of deciding this motion, the reasonableness of the fee request is not generally at issue. As the Third Circuit has commented,

> in statutory fee cases where an opposing party has been afforded an opportunity to raise a material fact issue as to the accuracy of representations as to the hours spent or the necessity for their expenditure and the clients to do so, there is ordinarily no reason for a court to disregard the uncontested affidavits of a fee applicant.

*Brinker v. Guiffrida,* 798 F.2d 661, 668 (3d Cir.1986). Nevertheless, the court will review the evidence in the record supporting each of the *Johnson* factors.

### 1. Time and Labor Required

The declaration of Wade Hargrove and the exhibits thereto describe the time and labor expended by ABC's counsel. Each of the tasks undertaken was deemed reasonable in light of the needs of the case and the actions of PrimeTime 24. PrimeTime 24 has not refuted this evidence. Thus, the time and labor factor supports a determination that the fees sought by ABC are reasonable.

### 2. The Novelty and Difficulty of the Issues

It is undisputed that, at the time this action was filed, no court had ruled on the SHVA and that the issues involved in this case were novel and also presented difficult and complex issues of communications and copyright law. Thus, this factor also supports a finding that the fee sought by ABC's counsel is reasonable.

### 3. The Skills Required to Perform the Legal Services

In seeking counsel for this action, ABC determined that Wade Hargrove and his colleagues at Brooks Pierce McLendon Humphrey & Leonard, LLP ("Brooks Pierce") were the only attorneys in North Carolina who possessed the specialized skill and knowledge to represent ABC in this litigation. This evidence is not refuted by PrimeTime 24. Accordingly, this factor also supports that the requested fee is reasonable.

### 4. Opportunity Costs

The Hargrove and Phillips declarations establish that the attorneys at Brooks Pierce have been forced to forego other work at the same billing rates in order to concentrate on this action. Thus, this factor also supports a finding that the fee requested is reasonable.

### 5. The Customary Fee for Like Work

The Phillips declaration establishes that the rates charged by Brooks Pierce for this litigation are the same rates charged in similar matters. PrimeTime 24 has not refuted this evidence. In addition, with the exception of Hargrove's rates, the rates charged by Brooks Pierce are comparable to those rates reported in the 1998

North Carolina Bar Association Economic Survey and the rates charged by other firms in North Carolina.

Mr. Hargrove's rate is reasonable and customary for attorneys of his expertise and experience in telecommunications and copyright law. PrimeTime 24 has not disputed ABC's evidence that Hargrove's rate in this case is the same that he normally and customarily charges his clients for similar work and that Mr. Hargrove's expertise and experience in these areas is unique among North Carolina lawyers. Thus, because work of this nature is typically handled by attorneys from larger cities, particularly Washington, D.C., and New York, it is appropriate for the court to consider the fees charges by attorneys from those communities in assessing the reasonableness of his fee. *See Rum Creek*, 31 F.3d at 175 (stating that, where it is reasonable to retain attorneys from other communities, the rates in those communities may be considered). Here, the rates charged by Hargrove are comparable to those charged by his peer group. In short, the undisputed evidence indicates that the rates charged by all attorneys at Brooks Pierce in this case were reasonable.

### 6. *The Attorney's Expectations at the Outset of Litigation*

In this case legal fees were incurred upon an hourly basis. The expectations of Brooks Pierce were not limited to either a fixed fee agreement or by the risk inherent in a contingency fee arrangement.

### 7. *The Time Limitations Faced by Brooks Pierce*

PrimeTime 24 has not refuted ABC's evidence that time deadlines in this case mandated bringing in other attorneys to help with the work and that the inclusion of other attorneys and personnel in the case was reasonable and appropriate.

### 8. *The Amount in Controversy and the Results Obtained*

As the Supreme Court has stated, the "most critical factor" in determining a reasonable fee award is "the degree of success obtained" and "where a plaintiff has obtained excellent results his attorney should recover a fully compensatory fee." *Hensley v. Eckerhart*, 461 U.S. 424, 435–36, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In this case, the court issued the precise relief that ABC requested. The court granted ABC's motion for summary judgment and permanently revoked PrimeTime 24's statutory compulsory license to retransmit ABC programming within WTVD's local market. This is the precise relief requested by ABC and was upheld by the Fourth Circuit. Thus, Brooks Pierce should recover a fully compensatory fee with no reduction in the lodestar figure.

### 9. *The Experience, Reputation and Ability of the Attorneys*

The Hargrove and Phillips declarations document the experience of the attorneys working in this case. The declaration of Roger Goodspeed evidences that ABC is pleased by the quality of work performed. In addition, the court found the work performed by ABC counsel to be of high quality. Thus, this factor weighs in favor of a determination that the rates billed by Brooks Pierce and the hours expended are reasonable.

### 10. *The Undesirability of the Case Within the Legal Community in which the Suit Arose*

The court agrees with ABC that this factor is neutral.

### 11. *The Nature and Length of the Professional Relationship Between Attorney and Client*

Brooks Pierce has performed work for ABC in the past and ABC has previously paid customary rates charged by Brooks Pierce. Thus, this factor weighs in favor

of a finding that the fees sought are reasonable.

### 12. *Attorney's Fee Awards in Similar Cases*

The Ninth Circuit has recognized that in a ·copyright case "comparisons to fee awards in other cases are largely irrelevant, and certainly not determinative, inasmuch as the reasonableness of a particular fee award depends upon a case-by-case analysis." *Fantasy, Inc. v. Fogerty*, 94 F.3d 553, 561 (9th Cir.1996). Because the other cases involving the SHVA have not yet progressed to consideration of an attorney's fee award, there is no directly comparable case to the instant one. Thus, the court does not find that this factor affects its determination as to the reasonableness of the fee award sought by ABC.

Based on these factors, the court agrees with ABC that the lodestar figure in this case should be calculated by multiplying the actual number of hours expended by the actual rate charged by each attorney. For the legal fees incurred and billed through September 30, 1998, this figure if $484,373.00. For legal fees incurred and billed from October 1, 1998, through July 30, 1999, this figure is $127,867.75. Thus, the total legal fees amount to $612,240.75.

■ Of this amount, the only item objected to by PrimeTime 24 relates to the legal fees billed by Brooks Pierce in connection with PrimeTime 24's motion to compel the deposition testimony of Hargrove in his capacity as spokesperson for the ABC affiliates and the broadcast trade group NASA. The court finds that Hargrove's refusal to testify in the absence of a court order was reasonable. Thus, the court finds that the fees incurred by ABC in connection with that discovery dispute are warranted. The court agrees, however, with PrimeTime 24's assertion that Hargrove should not be able to recover legal fees for his time during the deposition, approximately $7,000.00. The court will therefore reduce the attorney's fee award by $7,000.00. Accordingly, the court will award ABC attorney's fees in the amount of $605,240.75.

### CONCLUSION

For the foregoing reasons, the court will grant Plaintiff's motion and supplemental motion to award statutory attorney's fees. The court will award Plaintiff $605,240.75 in attorney's fees and $65,280.43 in legal expenses and costs.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

### *ORDER and JUDGMENT*

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED AND ADJUDGED that Plaintiff's motion [Doc. # 108] and supplemental motion [Doc. # 134] to award statutory attorney's fees are GRANTED. Plaintiff shall have and recover of Defendant the sum of SIX HUNDRED FIVE THOUSAND TWO HUNDRED FORTY AND 75/100's DOLLARS ($605,240.75) in attorney's fees and the sum of SIXTY–FIVE THOUSAND TWO HUNDRED EIGHTY AND 43/100's DOLLARS ($65,280.43) in legal expenses and costs.